**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL SHORE** | : | **NO. 17-502** |

**MEMORANDUM**

**Savage, J.**                                                                                          **March 23, 2026**

Defendant Michael Shore moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(5).  He claims that for the past seven years, he has not received sex offender treatment and treatment for his Autism Spectrum Disorder ("ASD") that could aid his rehabilitation.  He contends this lack of treatment is an extraordinary and compelling reason to compel his release to home confinement so that he can pursue treatment.  He also argues that the lack of treatment increases his risk for psychological distress, behavioral issues, and victimization in prison.

The government opposes relief.  It shows Shore has access to psychological services and is scheduled to begin sex offender treatment 36 months before his release.  The government also argues Shore benefitted from a significant downward variance based on his mental health.  Lastly, it contends he is a danger to the community.

Because Shore has access to treatment and cannot be released to home confinement without endangering public safety, we shall deny his motion.

On October 25, 2017, Shore pleaded guilty to five counts of use of an interstate commerce facility to entice a minor to engage in sexual contact, in violation of 18 U.S.C. § 2422(b); three counts of manufacturing and attempting to manufacture child pornography, in violation of 18 U.S.C. § 2251(a); distribution of child pornography, in

1

violation of 18 U.S.C. § 2252(a)(2); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  The charges arose out of his interactions with four minors.[1]

On July 7, 2020, Shore was sentenced to a mandatory minimum of 180 months in prison.  The sentence was a downward variance from the sentencing guideline of life imprisonment.

Within four months of being sentenced, Shore sent six letters to one of his victims.[2] He wrote that he wanted to be friends again, still loved her, and was telling other inmates she was his girlfriend.  He attempted to add her to his list of approved visitors.[3]  When she did not respond, he wrote to her mother.[4]  Shore's mother also reached out to the victim.[5]  The letters ceased when the victim's mother informed the prison warden of the unwanted communications.  In August 2024, a federal inmate called the victim after Shore had written her name and phone number in an area in the prison.[6]

### Analysis

A court may modify a defendant's sentence if, after consideration of the factors set forth in 18 U.S.C. § 3553(a), it determines that: (1) "extraordinary and compelling reasons" warrant a sentence reduction; (2) a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the defendant is not a danger to society.  18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(a).

---

[1] The charges and offense conduct are described in our Memorandum Opinion dated July 7, 2020, Doc. No. 50.

[2] Gov't's Resp. Opp'n Exs. B-1–B-6, Doc. Nos. 66-2–66-7.

[3] *Id.* Ex. B-5, Doc. No. 66-6.

[4] *Id.* Ex. B-6, Doc. No. 66-7.

[5] *Id.* Ex. B-5, Doc. No. 66-6.

[6] *Id.* Ex. C, Doc. No. 66-8.

Section 1B1.13 of the Sentencing Guidelines identifies "extraordinary and compelling" reasons warranting a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). They are serious medical conditions, advanced age, family circumstances, or abuse. U.S.S.G. § 1B1.13(b)(1)–(4). A mental condition is not among them. However, the list is not exhaustive. The Sentencing Commission did not preclude other reasons. It provided that other reasons can constitute extraordinary and compelling circumstances where, "by themselves or together with any of the reasons described in paragraphs (1) through (4), [they] are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

We start with the medical condition reason. Section 1B1.13(b)(1)(C) provides that when "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," it is a qualifying extraordinary and compelling reason.

Shore asserts that the lack of psychological treatment for his ASD and sex offenses is "similar in gravity" to the medical circumstances outlined in Section 1B1.13(b)(1)(C). We agree that a serious mental condition, in certain circumstances, may be similar in gravity to a serious health condition for purposes of applying Section 1B1.13(b)(1)(B)(i) or (C). We disagree that Shore's mental health condition, itself or in combination with other factors, meets the definition of a serious health condition. He has ASD, which is a life-long condition which can benefit from long-term, specialized psychological treatment. The Bureau of Prisons ("BOP") has not provided that care. But, there is no evidence Shore is "at risk of serious deterioration" of his mental health. BOP

3

records show that he is stable.  Psychological services are available if he experiences any deterioration.

There is nothing in the BOP medical records showing that Shore's medical, psychological, or mental health has deteriorated.  Although Shore is not receiving ASD treatment specifically, he has not been deprived of mental health treatment.  He is receiving necessary and reasonable medical and psychological treatment.  BOP records reveal he has been provided with mental health treatment and therapeutic programs that have benefitted him.

Shore signed up for 14 group courses.[7]  When he attended sessions, he did well. He voluntarily withdrew from 10 of the 14 programs[8] because he felt he had progressed to the point he no longer needed them.  He has not regressed and his condition remains stable.  He had been classified as a Mental Health Care-2 inmate, requiring routine, regularly scheduled appointments, and evaluation by medical specialists as needed.  In October 2022, he was downgraded to Mental Health Care-1 inmate status because his mental health symptoms did not require enhanced care to maintain stability.[9]  He has remained in that status.

Given Shore's diagnosis of pedophilia, that condition requires treatment. Consistent with standard BOP protocol, he will receive sexual offender treatment starting 36 months before his anticipated release date.

Shore argues he "remains at a higher risk of psychological distress, behavioral

---

[7] *Id.* Ex. E, Doc. No. 66-11.

[8] *Id.*

[9] *Id.* Ex. D-1 at 83, Doc. No. 66-9.

issues, and potential victimization within the prison system."[10]  He does not claim that he is suffering emotional distress or has behavioral issues.  On the contrary, as noted, he has been receiving necessary treatment and is stable.

Shore complains that the BOP failed to place him in a mental health program as we recommended.  A district court may recommend to the BOP certain conditions of confinement.  It cannot order them.  *United States v. Santos Diaz*, 66 F.4th 435, 447 (3d Cir. 2023).  The court may also recommend a particular program.  But, it is up to the BOP to decide what programs or treatment are fit for the defendant.  *Tapia v. United States*, 564 U.S. 319, 331 (2011).

Even if Shore's mental health was at risk, he has not shown how release to home confinement would reduce that risk and provide the rehabilitation he needs.  He has not provided any proposed plan to obtain treatment upon release.  Nor has he shown how the safety of his victims or other minors would be assured if he were released to a less restrictive setting.  His continued harassment of one of his victims while in prison shows he remains a danger to the community.  Thus, we cannot take him at his word that granting compassionate release "would not compromise public safety."[11]

Shore committed the offenses while residing at his parents' home.  His parents did nothing to prevent his deviant behavior.  Some of his offensive conduct occurred while Shore was working with his father at Comic Con conventions and his parents were aware of it.  Even when Shore was in prison and sending letters to one of his victims, his mother contacted the victim encouraging her to communicate with her son. Given this lack of

---

[10] Mot. Compassionate Release 20 (ECF pagination), Doc. No. 61.

[11] *Id.* at 24.

control over their son and apparent disregard for the seriousness of his conduct, we conclude home confinement offers no guardrails to curb Shore's compulsion to pursue his victims.

*Conclusion*

Shore has not shown that his mental health is an extraordinary and compelling reason to merit release.  Though he continues to need treatment for rehabilitation, it is not clear how he would receive that treatment if released to home confinement, or how he could be released without posing further danger to his victims.  Therefore, we shall deny his motion under 18 U.S.C. § 3582(c)(1)(A).